UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **YVONNE MASON,** individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:20-cv-3566 |
| **BIG STAR TRANSIT, LLC; LATANYA BIGGERS; LARRY C. BIGGERS;** and **LARRY BIGGERS, JR.**, | ) ) ) ) ) | JURY DEMAND |
| Defendants. | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Yvonne Mason, individually and on behalf of all others similarly situated, for her complaint against Big Star Transit, LLC, Latanya ("Tanya") Biggers, Larry C. Biggers, and Larry Biggers, Jr., says as follows:

## NATURE OF THE CASE

1. This is an action for independent contractor misclassification and related minimum wage and overtime claims brought by Plaintiff Yvonne Mason ("Plaintiff") on behalf of herself and all others similarly situated. Plaintiff has worked for defendant Big Star Transit, LLC ("Big Star") and its officers Tanya Biggers, Larry C. Biggers, and Larry Biggers Jr. (collectively the "Officers" and together with Big Star, the "Defendants") as a driver in Illinois.

2. Plaintiff brings this collective action on behalf of all individuals who drove or otherwise transported persons or things for Defendants in the United States for Defendants' violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, to recover damages suffered as a result of Defendants' misclassification of them as independent contractors, including unpaid minimum wages and unpaid overtime compensation.

3. Defendants engaged in this behavior willfully and without regard to the economic welfare of its employees and with full knowledge that Plaintiff and the Collective Class were conferring benefits upon Defendants that were improperly procured. Accordingly, in addition to the relief requested above, Plaintiff also seeks to recover for herself and the Collective Class liquidated damages, interest, costs, and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff and the Collective Class have brought a claim pursuant to the FLSA, 29 U.S.C. § 201 *et seq*.

5. This Court has personal jurisdiction over Big Star in this matter because, as further detailed below:

   a. Big Star is at-home in this District and Division because it is headquartered and maintains its principle place of business in this District and Division;

   b. Big Star purposefully originated, implemented, and controlled the wage and hour policies and practices that gave rise to the FLSA claims asserted herein, and Big Star purposefully entered into contracts seeking to misclassify its driver-employees as independent contractors in this District and Division; and

   c. Upon information and belief, Big Star purposefully entered into contracts misclassifying residents of this District and Division as independent contractors, thus causing harm to members of the Collective Class in this District and Division.

6. This Court has personal jurisdiction over the Officers whom, upon information and belief, are domiciled in this District and Division.

7. This Court has personal jurisdiction over the Officers whom, upon information and belief, originated, implemented, and controlled the wage and hour policies and practices that gave rise to the FLSA claims asserted herein, and directed and controlled Plaintiff and the Collective Class's day-to-day activities from this District and Division.

8. Venue is proper in this Court because Big Star's headquarters is located in this District and Division, Big Star maintains offices and conducts business throughout this District and Division, the Officers are domiciled in this District and Division, and a substantial part of the Defendants' acts and omissions giving rise to Plaintiff's and the Collective Class's claims occurred in this District and Division.

## THE PARTIES

9. Plaintiff Yvonne Mason is an adult resident of Hoffman Estates, Illinois where she resides at 2070 Hassell Road, Apt. 305. She was employed, as that term is defined by the FLSA, by the Defendants from on or about September 2018 through December 2018, and again beginning in January 2020. She continues to be employed by Defendants as of the day she filed this Complaint. Plaintiff Yvonne Mason hereby gives her consent to be a party plaintiff in this action, and her written consent is attached hereto as **Exhibit A.**

10. Plaintiff and the Collective Class are Defendants' current and former drivers who were classified by Defendants as independent contractors. At all times during the relevant statute of limitations period, Plaintiff and the Collective Class were individual employees who were engaged in commerce as defined by 29 U.S.C. §§ 206 & 207.

11. Defendant Big Star Transit, LLC is a limited liability company organized and existing under the laws of the State of Texas, and is headquartered and maintains its principle place of business at 6060 North Central Expressway, Suite 500, Dallas, Texas 75206.

12. Defendant Latanya "Tanya" Biggers is the Managing Member, President and CEO of Big Star Transit, LLC and is an individual who exercises significant operational control over Big Star's corporate affairs. Upon information and belief, as President and CEO of Big Star, Mrs. Biggers has the power to hire and fire employees, controls Big Star's conditions of employment, and has the power to control the rate and method of employee compensation.

13. Defendant Larry C. Biggers is the Chief Operating Officer of Big Star Transit, LLC and is an individual who exercises significant operational control over Big Star's corporate affairs. Upon information and belief, as Chief Operating Officer, Mr. Biggers recruits and develops Big Star's employees, and as a result, has the power to hire and fire employees, supervises and controls employee work schedules, controls Big Star's conditions of employment, has the power to control the rate and method of employee compensation, and is responsible for maintaining employee records.

14. Defendant Larry Biggers Jr. is the Director of Market Development of Big Star Transit, LLC and is an individual who exercises significant operational control over Big Star's corporate affairs as they relate to the misclassification of drivers as independent contractors. Upon information and belief, as Director of Market Development, Mr. Biggers Jr. is extensively involved with the day-to-day operations and conditions of employment for Big Star's drivers.

15. Upon information and belief, individual defendants Tanya Biggers and Larry C. Biggers were at all times relevant to the Collective Class employed by and serving as officers of Big Star Transit, LLC. Upon information and belief, individual defendant Larry Biggers Jr. was at all times after October 25, 2017 employed by and serving as an officer of Big Star Transit, LLC.

## FACTUAL COLLECTIVE ALLEGATIONS

16. Big Star is a self-described "non-emergency medical transportation company . . . specializing in efficient and innovative delivery of specialized passenger transportation services." Its purpose is to transport passengers to or from non-emergency medical appointments such as routine doctors' visits, methadone clinic appointments, dialysis appointments, and the like.

17. During the relevant statute of limitations period, Big Star hired drivers, which it calls "Network Providers," to provide passenger transportation services throughout the United States, including but not limited to, Texas, California, Florida, Nevada, and Illinois.

18. During the relevant statute of limitations period Plaintiff was one of hundreds, if not thousands, of drivers throughout the United States hired to transport Big Star passengers.

19. Drivers are an integral and essential part of Big Star's transportation business. Without Plaintiff and the Collective Class, Big Star could not operate.

20. Upon information and belief, Big Star recruits drivers in a number of different ways.

21. On its website, Big Star advertises its driver opportunities through its "Operator Portal" by, among other things, playing a radio clip titled "iHeart Radio Job Posting." In the radio advertisement, Big Star describes itself as a "national leader in non-emergency and medical transportation" and informs listeners that Big Star is "hiring 150 independent operators in Chicago," offers "generous sign on bonuses" and "excellent vehicle lease subsidies" before encouraging drivers to "apply."

22. The Operator Portal goes on to describe the benefits of becoming a Big Star driver.

23. It represents that drivers have "Low Startup Costs," specifically touting that "[o]utside of the minimal certification costs of the virtual online training program, there is ZERO upfront cash outlay required" to join.

24. It continues, "after completing your online certifications . . . just jump in a wheelchair accessible or sedan vehicle . . ." If a potential Big Star driver does not "have a vehicle that meets the requirements of the service you wish to provide? No problem! Big star has you covered with a full-service asset leasing partner that can provide you everything from the vehicle and maintenance to the required insurance coverage and in-vehicle technologies."

25. An ability to drive, and no other skill or initiative, is necessary to become a Big Star driver. Big Star finds all riders for its drivers, and "maintains all reservations, scheduling and dispatching functions." It "delivers rides to [its drivers] via digital manifests the night prior, completely routed . . . ." Drivers "need only fill their route commitments daily. The command center handles the rest."

26. Nor does it take any specialized education or extensive training to become a Big Star driver. Interested applicants need only complete a drug screen and background / driving history check and obtain Passenger Assistance and Defensive Driving certifications online.

27. Big Star employees provide training to all drivers. Upon information and belief, defendant Larry Biggers organizes and provides such training programs.

28. As a prerequisite to hiring, Plaintiff was required to sign a Contract for Transportation Services (the "Contract") with Big Star.

29. Under the terms and conditions of the Contract, Big Star has the right to control and direct the performance of Plaintiff's work. Big Star in fact regularly exercises such control

and direction over Plaintiff, making her job performance contingent only on her ability to fill route commitments.

    30. Among other things, the Contract:

        a. Provides for a continuous at-will relationship that ends only if Big Star terminates the driver, which Big Star may do under the agreement upon written notice for any reason whatsoever, and upon any notice if a driver is late to scheduled departure or arrival times, fails to accept assigned trips, is unavailable for work during Big Star's operating days and hours, or in response to customer complaints;

        b. Sets driver wages—deemed "rates"—per trip depending on a variety of factors, but not on the number of hours worked. Instead, Big Star bases driver compensation on trip distance, whether or not a driver carries a passenger ("loaded") or not ("no load"), is expected to assist a passenger to the entrance location (deemed "Medical Transportation Management") or not ("First Transit"), and whether or not a driver is performing work at a Veterans Administration hospital;

        c. Provides for the deduction of wages in the following non-exclusive ways:

          i. in an amount equal to the total amount of the driver's services if Big Star's customer does not pay Big Star for the services;

          ii. a $150 deduction each day that a driver fails to operate a route on a service day that Big Star is contractually obligated to provide services, and a $100 additional deduction if the driver leaves the route open after 7:00 p.m. local time;

          iii. a $50 deduction if a driver is late for his or her first scheduled trip;

  iv. a $500 deduction if a driver does not report an accident within 24 hours, or within 1 hour of a major accident;

  v. a $25 deduction each time a driver fails to clean the interior of a vehicle on a daily basis, or the exterior of the vehicle on a weekly basis;

  vi. a $25 deduction each time a driver fails to meet Big Star's or the customer's appearance requirements;

  vii. an undefined amount up to and equal to the total amount of damages levied against Big Star if a driver leaves a customer's location without confirming that the customer has safely entered the facility, home, or business;

  viii. the total amount of the driver's pay if Big Star terminates the driver on account of, by way of example only, a customer complaint, and must find another driver to cover the terminated driver's obligations;

  ix. an amount equal to the mileage surcharge that would have been paid to a driver for the distance traveled if, according to Big Star, a driver fails to take the "shortest and quickest route between the point of origin and point of destination," regardless of the reason.

 d. Controls the drivers' on-the-job appearance and conduct by, among other things:

  i. requiring drivers to wear Big Star uniforms, or at their request, uniforms of Big Star's customers;

  ii. mandating that drivers follow policies and protocols that are unilaterally set by Big Star, including its "Customer Regulations" and "Big Star Policies";

  iii. prohibiting use of the radio while a customer is present and non-emergency use of a cell phone whether or not a customer is present;

    iv. mandating that drivers be on-time for scheduled trips, wait a particular amount of time for a customer, and then abide by the instruction of Big Star's dispatchers, whom control if and when a driver may leave a customer's designated pick-up location if the customer fails to arrive during the designated pick-up window;

    v. requiring the prompt documentation and reporting of customer complaints;

    vi. mandating that drivers immediately report service problems, cracked windshields, and inoperable heating or cooling systems, to Big Star dispatch;

    vii. directing drivers to provide assistance to a Big Star customer undergoing a medical emergency;

    viii. prohibiting drivers from speaking to the media about Big Star, Big Star's customers, or members of the riding public;

e. Requires drivers to be equipped with mobile phones capable of accessing Big Star's reservations and scheduling software. Big Star uses this application to schedule client transportation, assign trips to drivers, assign "Shared Ride" trips to drivers, route the drivers' trips, track the drivers' GPS location, and requires drivers to use it to provide status updates, among other things. When assigned "Shared Ride" trips, Big Star drivers are not "paid duplicate mile surcharges "regardless of the number of passengers per vehicle";

f. Mandates that drivers pass an alcohol and drug screen, have safe driving records, have no evidence of moving violations in the year prior to starting, be able to speak, read, and write in English sufficient to communicate with Big Star customers and dispatchers, read maps, and record data;

  g. Imposes upon drivers a duty to maintain a vehicle meeting particular specifications as dictated by Big Star, and to permit the inspection of vehicles upon demand;

  h. Requires drivers to follow certain bookkeeping and record keeping rules, and mandates that drivers permit Big Star to inspect such books and records, to enter and inspect vehicles used to provide services to Big Star's customers;

  i. Requires drivers to obtain general liability, auto liability, and workers' compensation insurance; and

  j. Purports to designate Big Star's drivers as "Independent Contractors."

31. Upon information and belief, every driver in the Collective Class was required to sign the same or a substantially similar Contract prior to working for Big Star.

32. Upon information and belief, Big Star in fact deducts from the amounts owed to Plaintiff and the Collective Class as described above.

33. Practically speaking, Big Star exercises control over the day-to-day activities of Plaintiff and the Collective Class in a manner consistent with the Contract, or to an even greater extent.

34. For example, not only does the Contract require drivers to take the shortest route between a pickup location and a delivery, in practice, Big Star provides its drivers the directions to take, tracks the drivers' location via GPS via large screen monitors in Big Star's office space, and Big Star employees call drivers if they are behind schedule to obtain status updates.

35. While the Contract requires that drivers be available during certain days and hours, in practice, Big Star unilaterally dictates each driver's schedule, sending it to the driver the night before, and requires them to work at least a ten-hour commitment each day, five days a week.

36. Each day prior to performing transportation for Big Star, drivers are required to call each customer whose riders they will transport the following day. Big Star instructs its drivers to provide the customer their name, to represent that they are "from Big Star," and to confirm the pickup time. Drivers are not compensated for the time they spend making those phone calls.

37. As a result, Plaintiff and the Collective Class perform transportation services for the Defendants for more than forty hours, and in most cases, more than fifty hours each week.

38. Despite working more than forty hours a week on a regular basis, the Defendants do not pay their drivers overtime compensation.

39. As a practical matter, because of Defendants labor and employment practices, neither Plaintiff nor the Collective Class are able to offer their transportation services on their own behalf or for anyone independent of the Defendants. They are entirely dependent upon Big Star for work.

40. The services Plaintiff and the Collective Class provide on behalf of Big Star constitute a regular and continuing part of its business.

41. Big Star's customers include local and regional healthcare systems, veteran's administration hospitals, transit authorities, and others.

42. Upon information and belief, the only passengers that Plaintiff and the Collective Class transport are Big Star customers or their beneficiaries.

43. Upon information and belief, Big Star drivers are not hired to serve a specific customer.

44. Upon information and belief, the only transportation services that Big Star offers to its customers or their beneficiaries are provided by Plaintiff and the Collective Class.

45. Upon information and belief, Defendants Tanya Biggers and Larry Biggers are responsible for identifying prospective customers, for negotiating the terms and conditions of the business relationship including the rates to be paid to Big Star for transportation services, and for contracting with customers to provide transportation services.

46. Neither Plaintiff nor the Collective Class are permitted to negotiate with Big Star's customers to increase or otherwise change their rate of pay, or to otherwise independently value the services they are providing.

47. Upon information and belief, Big Star collects customer payments, and remits payment to each driver pursuant to an invoicing and dispute process after making deductions as described in the Contract.

48. Neither Plaintiff nor the Collective Class are allowed to collect customer payments in their own name, and Big Star also prohibits them from accepting tips for their services.

49. Big Star also makes it practically impossible for Plaintiff and the Collective Class to turn down an assigned trip. Trips assigned the night before must be accepted as a whole—individual rides cannot be accepted while others are rejected. During the workday, a driver may be assigned additional trips through Big Star's mobile application. Big Star makes these additional trips impossible to reject by removing the functionality of the "reject" button. In both cases, if a driver has not accepted the assigned trip within a time deemed appropriate by Big Star, a Big Star employee will contact the driver and demand that the driver accept the assigned trips.

50. For all assigned trips, Plaintiff and the Collective Class incur unreimbursed expenses, including gas and toll expenses that regularly cause the Plaintiff and Collective Class to earn less than the minimum wage. These expenses become significant when Plaintiff and other Collective Class members are required to transport Big Star's customers significant distances,

including across state borders. By way of example only, Plaintiff often transported Big Star clients from Illinois to Wisconsin and Indiana, or vice versa, and on one occasion, Plaintiff transported a Big Star client from Illinois to Kentucky, incurring gas and toll expenses along the way. None of her expenses were reimbursed.

51.  Because Defendants control the price that customers pay for driver services, the collection of customer payments, the rate of pay for Big Star's drivers, make it practically impossible for drivers to perform work in their own name or for another company, prohibit drivers from accepting tips, require drivers to take predetermined rides and follow predetermined directions, and refuse to reimburse drivers for business expenses, Plaintiff and the Collective Class have no significant opportunity for profit or loss.

52.  Upon information and belief, Defendants Mrs. Biggers, Mr. Biggers, and Mr. Biggers Jr. control the labor relations, employment policies and practices, and payroll operations for Big Star.

53.  Upon information and belief, Big Star performs sales, marketing, and advertising tasks for its drivers.

54.  Upon information and belief, Big Star employs a customer relations team that resolve escalating customer service issues for all Big Star drivers.

55.  In addition to the full service contracting, sales, marketing, and customer relations services Big Star provided, Big Star also provided the key materials Plaintiff and the Collective Class needed to perform their duties—vehicles.

56.  Big Star did so through use of a lease agreement whereby Big Star provided Plaintiff and the Collective Class with the right to possess and use a motor vehicle for an indefinite period of time. Upon information and belief, all motor vehicles provided to and operated by

Plaintiff and the Collective Class are sedans or wheelchair accessible vans weighing less than 10,000 lbs.

57. For each week that a driver possesses the vehicle, regardless of whether or not the driver works, Big Star charges a weekly lease rate of $375.00 for sedans, and $500.00 for wheelchair accessible vans. To make the lease payment financially feasible for its drivers, Big Star deducts the cost of the lease from the wages owed to its drivers.

58. Pursuant to the lease, drivers must perform preventative maintenance at their sole cost and expense.

59. In the event a driver fails to perform the preventative maintenance on a leased vehicle, Big Star deducts $250 from the driver's wages as a form of liquidated damages.

60. If a driver uses a leased vehicle for any purpose unrelated to Big Star's transportation services, Big Star deducts from a driver's wages an amount equal to "last month's lease," without further specificity.

61. If a leased vehicle is returned to Big Star without appearing "like new," Big Star will deduct from the driver's wages an amount equal to the cost of cleaning or repairing the vehicle.

62. Plaintiff and the Collective Class are employees of Big Star under the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

63. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings claims under the FLSA on behalf of all similarly situated individuals who may choose to "opt-in" to this action for unpaid wages and unpaid overtime, both of which were knowing and willful violations.

64. At all material times, Defendants acted, directly or indirectly, in the interest of an employer or joint employer with respect to Plaintiff and the Collective Class.

65. At all material times, Defendants have been the employer or joint employer of Plaintiff and the Collective Class within the meaning of 29 U.S.C. § 203(d).

66. At all material times, Plaintiff and the Collective Class were engaged in commerce within the meaning of 29 U.S.C. § 203(b) as required by 29 U.S.C. §§ 206 and 207.

67. All potential opt-in plaintiffs are similarly situated, as Big Star's policy and practice of classifying all drivers as independent contractors and not paying them adequate wages or overtime compensation was applicable to all drivers throughout the United States and resulted in a violation of the FLSA.

68. Accordingly, Plaintiff defines the Collective Class to include:

> All persons who transported persons or things for Big Star within the United States during the relevant statute of limitations period.

69. The claim meets the requirements for collective action certification under the FLSA.

## CAUSES OF ACTION

### COUNT I (Collective Action)
### Violation of the Fair Labor Standards Act (against Big Star)

70. Plaintiff incorporates by reference Paragraphs 1 – 69.

71. Big Star's knowing and willful failure to properly pay minimum wages to Plaintiff and the Collective Class based on their misclassification as "independent contractors" violates the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

72. Big Star's knowing and willful failure to properly pay overtime compensation at a rate of time-and-a-half for hours worked more than forty (40) in a workweek by Plaintiff and the Collective Class based on their misclassification as "independent contractors" violates the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

## COUNT II (Collective Action)
## Violation of the Fair Labor Standards Act (against Defendants Tanya Biggers, Larry C. Biggers, and Larry Biggers Jr.)

73. Plaintiff incorporates by reference Paragraphs 1 – 72.

74. Defendants Tanya Biggers, Larry C. Biggers, and Larry Biggers Jr. have responsibility for and control over Big Star's employment practices.

75. Defendants Tanya Biggers, Larry C. Biggers, and Larry Biggers Jr. have the power to hire and fire employees, and to terminate Big Star's drivers.

76. Defendants Tanya Biggers, Larry C. Biggers, and Larry Biggers Jr. are responsible for creating and imposing upon drivers the terms and conditions set forth in the Contract, including its compensation structure, wage deductions, and driver appearance and conduct control elements.

77. Defendants Tanya Biggers, Larry C. Biggers, and Larry Biggers Jr. are responsible for maintaining employee and driver records.

78. Defendants Tanya Biggers, Larry C. Biggers, and Larry Biggers Jr. are personally liable, whether jointly or severally, for Big Star's knowing and willful failure to properly pay minimum wages to Plaintiff and the Collective Class based on their misclassification as "independent contractors," which violates the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

79. Defendants Tanya Biggers, Larry C. Biggers, and Larry Biggers Jr. are personally liable, whether jointly or severally, for Big Star's knowing and willful failure to properly pay overtime compensation at a rate of time-and-a-half for hours worked more than forty (40) in a workweek by Plaintiff and the Collective Class based on their misclassification as "independent contractors," which violates the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

## RELIEF SOUGHT

**WHEREFORE,** Plaintiff, and all those similarly situated, collectively pray that this Honorable Court hold the Defendants jointly and severally liable, and seek judgment against the Defendants as follows:

A. An order conditionally certifying a class of similarly situated individuals under the FLSA and directing the issuance of notice informing affected individuals of their right to opt-in to this action. With respect to the claim under the FLSA, Plaintiff seeks certification of a collective class that includes all persons who performed driving services or were otherwise part of Big Star's "network of providers" during the relevant limitations period.

B. A finding that Defendants' violations of the FLSA were willful and knowing, and therefore subject to a three-year statute of limitations.

C. All damages to which Plaintiff and the Collective Class are entitled pursuant to applicable law.

D. Liquidated damages, pursuant to federal law.

E. Attorney's fees, costs, and interest allowed by law.

F. Such other relief as the Court may deem proper and just.

*[signature page to follow]*

Respectfully Submitted,

/s/ *J. Forester*
**Jay Forester**
Texas Bar No. 24087532
**Meredith Mathews**
Texas Bar No. 24055180
**FORESTER HAYNIE PLLC**
400 N. St. Paul Street, Suite 700
Dallas, TX 75202
(214) 210-2100 (phone)
(214) 346-5909 (fax)
jay@foresterhaynie.com
mmathews@foresterhaynie.com

**Adam J. Shafran**
(*pro hac vice* application to be submitted)
**Eric J. Walz**
(*pro hac vice* application to be submitted)
**RUDOLPH FRIEDMANN, LLP**
92 State Street
Boston, MA 02109
617-723-7700
617-227-0313 (fax)
ashafran@rflawyers.com
ewalz@rflawyers.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is the Original Complaint. Service of this Complaint will be made to Defendants with summons to be issued by the clerk according to the Federal Rules of Civil Procedure.

/s/ *J. Forester*
**Jay Forester**